IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GREGORY CANYON PETERSEN,

               Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

No. 3:15-cv-01023-HZ

OPINION & ORDER

Gregory Canyon Petersen
17029 SE Powell Blvd.
Portland, OR 97236

     Pro se Plaintiff

//

//

1 - OPINION & ORDER

Billy J. Williams
Acting United States Attorney, District of Oregon
Janice E. Hebert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97201

Erin F. Highland
Social Security Administration
SSA Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 98104
Seattle, WA 98104

      Attorneys for Defendant


HERNÁNDEZ, District Judge:

      Pro se Plaintiff Gregory Canyon Petersen brings this action under the Social Security Act

("Act"), 42 U.S.C. § 405(g), for judicial review of the Commissioner of Social Security's final

decision denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act

and Supplemental Security Income ("SSI") under Title XVI of the Act. Because it is based on

legally sufficient reasons supported by substantial evidence, the Commissioner's decision is

affirmed.

## BACKGROUND

      Petersen applied for DIB and SSI on March 11, 2011, alleging an onset date of January 1,

2008. Tr. 20.[1] The Commissioner denied his application, and Petersen requested a hearing before

an Administrative Law Judge ("ALJ").[2] Tr. 20. After a hearing in September of 2013, ALJ Sue

Leise found Petersen was not disabled. Tr. 20–33. Petersen appealed, but the Appeals Council

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as Docket No. 12.
[2] Petersen previously applied for Title II and Title XVI benefits in 2008, but was denied. Tr. 130, 292.

denied his request for review, making ALJ Leise's ruling the Commissioner's final decision that Petersen now challenges in this Court. Tr. 1–4.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the analysis moves to step four, where the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five, where the ALJ determines whether the claimant can perform other work in the national economy considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## ALJ DECISION

The ALJ found that Petersen last met the insured status requirements of the Act on December 31, 2013. Tr. 22. At step one, the ALJ found that Petersen had not engaged in substantial gainful activity during the period between his alleged onset date of July 1, 2008 and his date last insured. Tr. 22. At step two, the ALJ found that Petersen had the "following severe impairments: chronic cough, vocal cord dysfunction, depression, and posttraumatic stress disorder (PTSD)." Tr. 22. At step three, the ALJ found Petersen's impairments did not meet or equal a listed impairment. Tr. 23–24. Next, the ALJ found that Petersen had the following RFC:

> [C]laimant has the residual functional capacity to perform light work . . . , except the claimant can lift and/or carry ten pounds frequently and twenty pounds occasionally. The claimant can sit for at least six hours in an eight-hour workday and stand/walk for at least six hours in an eight-hour workday. The claimant is limited to no more than occasional climbing ramps and stairs. He cannot climb ladders, ropes or scaffolds and is limited to no more than occasional balancing and crawling. The claimant must avoid exposure to extremes of cold and heat and must avoid exposure to fumes, odors, dust, gases and other pulmonary irritants and hazards, such as unprotected heights and dangerous machinery. The claimant may not perform work that involves the operation of a motor vehicle. The claimant is able to remember, understand and carry out simple to detailed instructions typical of occupations with an SVP of 1–4. He can have no interaction with the general public. He can work in proximity to coworkers but

should not perform any teamwork or work with only occasional interaction to
complete tasks assigned.

Tr. 24. At step four, the ALJ determined that Petersen was unable to perform his past relevant

work as an home attendant or floor attendant. Tr. 31. At step five, the ALJ found that, based on

his RFC, the relevant Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix

2, and testimony from a vocational expert ("VE"), there were jobs that existed in significant

numbers in the national economy that Petersen could perform, including optical goods assembly,

small products assembly, and hand packager for plastic goods. Tr. 32–33. Accordingly, the ALJ

found that Petersen was not disabled under the Act. Tr. 33.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court

must weigh all of the evidence, whether it supports or detracts from the Commissioner's

decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to

more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at

1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the

Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc.

Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

## DISCUSSION

The Court has a duty to liberally construe Petersen's pro se brief. Erickson v. Pardus, 551

U.S. 89, 94 (2007). Petersen identifies numerous purported errors that can be grouped generally

into two categories. First, Petersen asserts that the ALJ erred in analyzing several of his daily activities, such as his ability to play video games for long stretches of time, walking, and "enjoying bowling." Pl. Brief at 1. The ALJ discussed these activities as part of the analysis of Petersen's credibility. Therefore, the Court broadly construes Petersen's brief as attributing error to the ALJ's conclusion that Petersen's claims about the disabling effects of his symptoms were not entirely credible. See Tr. 30–31. Petersen also asserts that the ALJ erred in analyzing evidence from a number of his medical providers. Pl. Brief at 1–2. Each is addressed below.

## 1. Credibility

An ALJ analyzes the credibility of a claimant's testimony regarding his subjective pain and other symptoms in two steps. Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (citation and internal quotation omitted). "The claimant, however, need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." Id. (citation and internal quotation omitted). Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject his testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Id. (citation and internal quotation omitted).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc )). The ALJ may consider objective medical evidence and the claimant's

treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. Id.

At step one, the ALJ found that the Petersen's "medically determinable impairments caused symptoms resulting in some limitations on work activity." Tr. 25. The ALJ then noted that Petersen had been diagnosed with chronic cough, vocal cord dysfunction, post-traumatic stress disorder ("PTSD") and depression. Tr. 22, 25. At step two, the ALJ found that Petersen was "credible to the extent he suffers from the above-mentioned impairments." Tr. 30. However, the ALJ found that Petersen's "allegation that he is incapable of all work activity" to be not credible because his "functional limitations are not as significant and limiting as have been alleged." Tr. 30. The ALJ discounted Petersen's claims because he had an inconsistent work history, he held himself out as available for work, his daily activities were not as limited as expected given his allegations, and the medical evidence in the record did not support Petersen's allegations about the severity of his physical and mental impairments. Tr. 30–31. The ALJ also found evidence of secondary gain motive. Tr. 31.

After reviewing the record, the Court finds the ALJ's numerous reasons for discounting Petersen's credibility meet the required "clear and convincing" standard. First, a claimant's poor work history or other evidence demonstrating a claimant's lack of motivation to work is a relevant factor in assessing a claimant's credibility. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Here, the ALJ found that Petersen's "work history had gaps even before the alleged" onset date, and that Petersen failed to earn at a substantial gainful activity level in seven of the

fifteen years prior to his alleged onset date. Tr. 30. Those conclusions are supported by evidence in the record of Petersen's past earned wages. Tr. 320–21. Therefore, the ALJ's conclusion that Petersen's sporadic work history "raises questions as to whether [his] continuing unemployment is actually due to his medical impairments" is a legally sufficient reason for discounting Petersen's credibility.

The next point of analysis requires some unpacking. The ALJ noted that during the time Petersen claims his symptoms were so severe that he was unable to work, the record showed Petersen was "playing online video games for up to 12-15 hours per day," and that Petersen had indicated "having a gig for six months." Tr. 30–31. At the hearing, Petersen explained that this "gig" and his video game playing are related. His game of choice was EverQuest II, a type of massively multiplayer online game. Tr. 60.[3] Apparently, the game is so popular among its users that experienced players can collect items in the game and auction them to other players in exchange for real money. Tr. 941. Petersen explained to the ALJ that over the approximately fifteen years he had invested in the game, he had acquired enough game resources to auction off bits of his virtual stockpile to "try to get some extra cash to make sure the electricity stays on." Tr. 60–61. The reference to a "six month gig," Petersen explained, was a misunderstanding on the part of his provider whom he had told about this auctioning idea. Petersen explained the system to her and mentioned that he had "enough stuff . . . to sell that would last me up . . . to six months." Tr. 61.

The ALJ reasoned that these activities contradicted Petersen's claims that his symptoms were so severe that they rendered him incapable of all work activity. Tr. 30. The inconsistency

---

[3] According to Wikipedia, "EverQuest II is a 3D fantasy massively multiplayer online role-playing game (MMORPG) . . . . Within *EverQuest II*, each player creates a character to interact in the 3D, fictional world of Norrath. The character can adventure (complete quests, explore the world, kill monsters and gain treasures and experience) and socialize with other players." EverQuest II, WIKIPEDIA.COM, https://en. wikipedia.org/wiki/EverQuest_II (last visited Mar. 7, 2016).

between Petersen's ability to essentially "work" at his video game for long stretches of time and his claims about the limiting effects of his symptoms is a valid reason for discounting his credibility. Hardman v. Astrue, No. CV 09-931-MO, 2010 WL 3245533, at *4 (D. Or. Aug. 10, 2010) (citing Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (noting that an ALJ may properly consider activities inconsistent with alleged symptoms in assessing credibility)).

Petersen contends that the record reflects that these efforts exhausted him and he "required several months to physically recover." Pl. Brief at 1. That may be true, but it is not a basis for overturning the ALJ's conclusion about Petersen's credibility. For one, Social Security regulations do not demand a claimant perform at such a rate to be considered able to work; the question driving the ALJ's analysis was whether Petersen's symptoms were so severe that they would prevent him from working a normal, eight-hour work day, five days a week. See Mulanax v. Comm'r of Soc. Sec., 293 F. App'x 522, 523 (9th Cir. 2008) ("Generally, in order to be eligible for disability benefits under the Social Security Act, the person must be unable to sustain full-time work-eight hours per day, five days per week."). Secondly, as explained above, the fact that Petersen was apparently able to sustain this level of work for six months plainly contradicts his claim that his symptoms are so severe that he is incapable of performing even sedentary work. Thus, the Court finds no error.

The ALJ also discounted Petersen's credibility because his "daily activities of living . . . are not as limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 31. Petersen reported independently managing his own care, doing dishes and laundry, albeit slowly, sending emails, preparing simple meals, shopping, reading for pleasure, and walking to appointments. The ALJ noted that Petersen engaged in a number of hobbies including playing video games for long periods, collecting coins and gems, gardening,

building his own computers, and even fishing for crawfish on the Sandy River. The inconsistency between Petersens's ability to perform these activities and his claims that any physical activity, including "even typing on a computer" will "eventually . . . throw[] [him] into a nasty coughing attack," Tr. 56, is a legitimate reason for discounting his credibility. Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014).

Another reason the ALJ gave for discounting Petersen's credibility is that "the medical record does not support the severity of [Petersen's] physical or mental impairment." Tr. 31 The ALJ noted the "absence of objective findings or a known etiology for [Petersen's] cough." Tr. 25. Several pulmonologists have examined Petersen over the years, but none have diagnosed any lung disease, airway restriction, asthma, or any other conditions. Tr. 26. The ALJ further noted that one doctor diagnosed Petersen with a vocal cord disorder, but also that the disorder "appear[ed] to have occurred only secondary to his difficulties with chronic cough." Tr. 26. The total absence of any objective medical evidence about Petersen's cough is a legitimate basis to discount the credibility of his claims about the limiting effects of those symptoms. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective . . . testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's" symptoms and their disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)).

Notably, the ALJ also relied on a report from a Cooperative Disability Investigative ("CDI") team who visited Petersen at his residence in 2011 to investigate suspicions that Petersen was "attempting to fraudulently obtain SSA benefits." Tr. 355. The investigators met with Petersen under the guise of showing him pictures of possible wanted suspects, and during the pretextual interview, Petersen discussed at some length relationship difficulties with his ex-

girlfriend, his current living situation with his mother, and his financial difficulties. Tr. 356–360. After more than thirty minutes, the conversation shifted to Petersen's application for Social Security benefits. Tr. 361. When asked about his disability, Petersen "said that he had a chronic cough, which could not be medically diagnosed. At the same time, Petersen started a deep hacking cough." Tr. 361. One of the investigators noted that Petersen "had been talking with the investigators for over 30 minutes prior to this coughing attack, which came as Petersen was talking about his disability." Tr. 361. Later in the interview, Petersen walked, without exhibiting any physical difficulties or experiencing a coughing attack, with the investigators to their vehicle to get a business card from one of the officers. In fact, during the approximately forty minute interview, the only time Petersen experienced a coughing attack was while talking about his disability. Tr. 362.

The ALJ used this CDI report along with the ALJ's own observations about Petersen's coughing at the hearing to conclude that Petersen's allegations about his coughing were less than credible. See Tr. 26. Again, the patent inconsistency between Petersen's claim that physical activity as minor as moving his fingers on a computer keyboard will cause him coughing fits, and his demonstrated ability to talk with investigators for over thirty minutes and walk with them without coughing is a legitimate reason, supported by substantial evidence in the record, for discounting his credibility. Smolen, 80 F.3d at 1283 ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid[.]").

Finally, the ALJ discounted Petersen's credibility because "during the period [Petersen] has alleged he was disabled and unable to work, [he] was noted to be . . . submitting online job applications as part of the requirement for unemployment, [and] looking into returning to work . . . ." Tr. 30–31. "The receipt of unemployment benefits in Oregon is not necessarily inconsistent with the filing of an application for disability benefits under the Social Security Act." Hardin v. Colvin, No. 6:14-CV-01044-SB, 2015 WL 7766080, at *7 (D. Or. Nov. 4, 2015) report and recommendation adopted, No. 6:14-CV-1044-SB, 2015 WL 7777889 (D. Or. Dec. 2, 2015) (citing Mulanax, 293 F. App'x at 523). "Generally, in order to be eligible for disability benefits under the Social Security Act, the person must be unable to sustain full-time work-eight hours per day, five days per week." Mulanax, 293 F. App'x at 523. Under Oregon law, however, "a person is eligible for unemployment benefits if she is available for some work, including temporary or part time opportunities." Id. (citing OR. ADMIN. R. 471–0300036(2)(b), (3)(b)). Here, the record does not indicate whether Petersen was applying for part-time or full-time work, and thus the ALJ erred in discounting Petersen's credibility on that score.

This error, however, does not necessarily require the Court to disturb the ALJ's conclusion that Petersen's claims are not entirely credible. If there is substantial evidence supporting the ALJ's other reasons for discounting a claimant's credibility, an error as to one reason "does not negate the validity of the ALJ's ultimate [credibility] conclusion[.]" Minter v. Comm'r of Soc. Sec., No. 3:11-CV-00113-KI, 2012 WL 1866608, at *3 (D. Or. May 22, 2012) (quoting Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)).

As explained at length above, the ALJ gave numerous, legally sufficient reasons supported by substantial evidence in the record for discounting Petersen's claims. The same is true for any error the ALJ committed in referencing Petersen's attempt to bowl on occasion. See

Pl. Brief at 1 (attributing error to the ALJ's reference to evidence in the record that Petersen "enjoy[ed] bowling); Tr. 31.Therefore, the ALJ's error in relying in part on Petersen's receipt of unemployment or that he "enjoy[ed]bowling" is a harmless one that does not warrant overturning the ALJ's ultimate conclusion about Petersen's credibility. Carmickle, 533 F.3d at 1162 (explaining that an error in one reason for discounting credibility is harmless where an ALJ's "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record.").

### 2. Medical Evidence

Next, Petersen asserts that the ALJ erred in evaluating evidence from a number of medical sources, including Dr. Caleb Burns, Dr. Peter Hatcher, Sheila Davis, R.N., and Cassie Mapolski, PA-C. Pl. Brief at 1–2. There are three sources of medical opinion evidence in Social Security cases: treating physicians, examining physicians, and non-examining physicians. Valentine, 574 F.3d at 692 (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. The ALJ can reject the uncontroverted opinion of a treating or examining physician only for "clear and convincing reasons" supported with substantial evidence in the record. Orn, 495 F.3d at 632 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if a treating or examining doctor's opinion is contradicted by another doctor, the ALJ can reject it only by providing "specific and legitimate reasons" that are supported by substantial evidence. Id.

//

//

### a. Dr. Caleb Burns

Dr. Burns conducted a consultive psychological examination with Petersen on February 17, 2011. Dr. Burns diagnosed Petersen with major depression, PTSD, and assigned him a global assessment of functioning ("GAF") score of 48. Tr. 477. Dr. Burns wrote that "[b]ecause of his depression and ongoing coughing Mr. Peters[e]n is not seen to be employable in any competitive work setting for the next 12 months." Tr. 476. "If he is placed in an employment setting," Dr. Burns continued, Petersen "will distract fellow employees, will scare the public, will be unable to maintain emotional stability, [and] will probably be unable to maintain the energy required to attend work regularly . . . ." Tr. 476–77.

The ALJ gave Dr. Burns's opinion "little weight." Tr. 29. The ALJ explained that Dr. Burns's opinion was "based on [Petersen's] physical health impairments in addition to psychological conditions, which reflects areas in which Dr. Burns has no expertise." Tr. 29. Dr. Burns's opinion also did "not square with [Petersen's] overall presentation at [th]e hearing and his ability to perform gaming activities for long stretches of time." Tr. 29. Finally, the ALJ explained, Dr. Burns's opinion  was "inconsistent with [Petersen's] good mental status examinations and positive response to treatment with medication." Tr. 29.

After reviewing the record, the Court finds that the ALJ supported his analysis of Dr. Burns's opinion substantial evidence in the record and thus did not err. First, given that Dr. Burns is a psychologist, the ALJ did not err in discounting his opinions about the effects of Petersen's physical impairment, i.e. his coughing, as this is outside of his area of expertise. See Etapa v. Colvin, No. 3:12-CV-05343-KLS, 2013 WL 2243885, at *5 (W.D. Wash. May 21, 2013) (similarly finding no error where ALJ rejected psychologist's opinion about claimant's physical impairments) (citing 20 C.F.R. § 404.1513(a), (d)).

14 - OPINION & ORDER

Secondly, the ALJ could legitimately rely on the conflict between Petersen's demonstrated ability to engage in video games for long stretches of time and Dr. Burns's opinion that Petersen would "probably be unable to maintain the energy required to attend work regularly." See Aarestad v. Comm'r of Soc. Sec. Admin., 450 F. App'x 603, 605 (9th Cir. 2011) (finding no error in ALJ's rejection of medical opinion evidence where doctor's "opinions were inconsistent with [the claimant's] own admitted daily activities and abilities and with actions that [the claimant] performed at the hearing."); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (inconsistency between doctor's opinion and the claimant's reported daily activities was a legitimate reason for discounting doctor's opinion).

Finally, the conflict between Dr. Burns's opinion and other evidence suggesting Petersen's mental status was largely good and that he responded well to medication is yet another legitimate reason, supported with substantial evidence in the record, for the ALJ to give less weight to Dr. Burns's report. Rusten v. Comm'r of Soc. Sec. Admin., 468 F. App'x 717, 720 (9th Cir. 2012) (finding no error in ALJ's discounting of a doctor's opinion because the impairments in question were controlled with treatment and were thus not considered disabling under the Act) (citing Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . .") (citation omitted)).

### b.  Dr. Peter Hatcher

Dr. Hatcher submitted a letter in support of Petersen's application dated September 2, 2013. Tr. 892. Dr. Hatcher stated that he and other providers at the clinic where Dr. Hatcher works had been treating Petersen since late 2011 for "anxiety, PTSD, . . . depression, . . .

dyspnea and cough impairing activity, chronic foot pain, and chronic nausea." Tr. 892. Dr.

Hatcher then opined that, based on these impairments, Petersen was "not able to engage in

competitive employment, would regularly miss work or need to go home early, would not be

able to work 40 hours per week in any week, and would not be able to handle workplace stress

without psychiatric decompensation." Tr. 892.

The ALJ gave Dr. Hatcher's opinion "little weight." Tr. 29. "Dr. Hatcher," the ALJ

explained, "[did] not provide specific functional limitations or explain in any significant detail

the reason for his assessment. His opinion is inconsistent with [Petersen's] psychological

treatment record that contained only one brief psychiatric decompensation episode and the

extensive albeit negative work-ups to explain the claimant's coughing symptoms." Tr. 29.

Again, the Court finds no error. "An ALJ may reject a medical report that does 'not show

how [a claimant's] symptoms translate into specific functional deficits which preclude work

activity.' " Viles v. Colvin, No. 3:14-CV-0534-SI, 2015 WL 1393296, at *8 (D. Or. Mar. 25,

2015) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999);

Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)). And, as mentioned above, an ALJ can

properly discount a medical opinion that is "conclusory, brief, and unsupported by the record as

a whole." Batson, 359 F.3d at 1195; see also Holohan v. Massanari, 246 F.3d 11895, 1202 (9th

Cir. 2001) (explaining that Social Security regulations "give more weight to opinions that are

explained than to those that are not.").

### c.  Sheila Davis, R.N.

Ms. Davis is a vocational rehabilitation counselor and Registered Nurse who met with

Petersen in April of 2013 to discuss his application for vocational rehabilitation services. Tr. 698.

Ms. Davis wrote in a letter that she believed Petersen was "a very good candidates for [S]ocial

[S]ecurity disability benefits" based on his reported symptoms and information from one of his treating medical providers. Tr. 698. The ALJ gave Ms. Davis's opinion "little weight" because she was "not an acceptable medical source," the determination of Petersen's eligibility for Social Security benefits is reserved for the Commissioner, and her opinion did "not square with the overall medical evidence of a cough with no known etiology and mental health conditions mostly treated with some success using only routine and conservative modalities." Tr. 29.

As a registered nurse, Ms. Davis is not an "acceptable medical source" under Social Security regulations, and is therefore not entitled to the same deference as a medically acceptable treating source. SSR 06–03p, 2006 WL 2329939 at *2 (nurse practitioners and physician assistants are not "acceptable medical sources"); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "The ALJ may discount testimony from . . . 'other sources' " such as registered nurses, "if the ALJ gives reasons germane to each witness for doing so." Molina, 674 F.3d at 1111. Here, the ALJ gave several germane reasons for discounting Ms. Davis's opinion. As mentioned above, an ALJ can properly reject a medical opinion that is "conclusory, brief, and unsupported by the record as a whole." Batson, 359 F.3d at 1195. And, as already discussed, the inconsistency between the medical records showing Petersen's mental health impairments were successfully treated with medication is a legitimate reason for discounting a medical opinion that those conditions significantly impair his ability to work. Rusten, 468 F. App'x at 720; Warre, 439 F.3d at 1006. Accordingly, the Court finds no error.

### d.  Cassie Mapolski, PA-C

Ms. Mapolski is a physician assistant who completed a physical capacity statement about Petersen in April of 2013. She opined that Petersen could stand or walk less than two hours and sit more than six hours in a work day. Tr. 576. She wrote that Petersen was somewhat limited in

his ability to grasp and manipulate objects, and was even more limited bending at the waist and

pushing or pulling with his hands and feet. Tr. 578. She opined that Petersen should never squat,

crawl, climb, twist, crouch, balance, or stoop, or lift anything heavier than ten pounds. Tr. 578.

She wrote that Petersen was incapable of sustaining even a low stress job, he would be absent

more than two days per month due to his impairments, and he would be unable to sustain

attention and concentration for unskilled work more than two-thirds of the day. Tr. 578.

The ALJ noted that Ms. Mapolski was not an acceptable medical source under the

regulations and gave her opinion "little weight." Tr. 27. "The limitations to less than full-time

sedentary work and restriction in manipulation and postural (sic) are simply not supported by the

overall record. [Petersen] has no impairment that impacts his upper extremities directly." Tr. 27.

"There is no objective etiology for [Petersen's] cough," the ALJ explained, "and . . . the

undersigned cannot find that simply the secondary vocal cord dysfunction and coughing

symptoms limit [Petersen] to less than light level work." Tr. 27.

Because Ms. Mapolski is not an acceptable medical source, the ALJ was only required to

give germane reasons for discounting her opinions. SSR 06–03p, 2006 WL 2329939 at *2 (nurse

practitioners and physician assistants are not "acceptable medical sources"); Molina, 674 F.3d at

1111. The Court finds the ALJ provided such reasons here. There is no evidence in the record

about Petersen's upper extremity impairment, and in fact, Mapolski's own report does not

specify an upper extremity impairment in the list she made of  Petersen's conditions. Tr. 576.

Moreover, the ALJ correctly noted that there is no objective evidence of the etiology for

Petersen's cough. Thus, the ALJ did not err in giving little weight to Ms. Mapolski's  opinion.

//

//

### 3. Psychiatric Hospitalization

Finally, Petersen identified an inconsistency in the ALJ's decision regarding Petersen's past psychiatric hospitalization. "A direct error and contradiction," Petersen writes, "in the denial of benefits is seen on page 4 and 9 . . . as page 4 states that I was never hospitalized and page 9 states that I was hospitalized." Pl. Brief at 1. Petersen is correct that the ALJ's opinion is inconsistent on this point. When analyzing the severity of Petersen's impairments at step two, the ALJ wrote that "[Petersen] was never psychiatrically hospitalized nor did he have any other episodes of decompensation of extended duration." Tr. 23. But when discussing the medical evidence a few pages later, the ALJ explains that Petersen was "psychiatrically hospitalized only once and very briefly," Tr. 27, and that once he left the hospital, Petersen "quickly recovered" and responded well to medication. Tr. 28.

This error is a harmless one that does not change the conclusion that the ALJ's overall decision that Petersen is not disabled under the Act is supported by substantial evidence and must be affirmed. Even if the ALJ had correctly assessed at Step Two that Petersen had been psychiatrically hospitalized one time for a few days, a claimant must have experience at least two episodes of decompensation, each at least two weeks long, to meet one of the prongs of a listing level mental impairment. Petersen's hospitalization does not meet the listing requirements, and thus the inconsistency in the ALJ's decision about Petersen's psychiatric hospitalization is a harmless error. Robbins, 466 F.3d at 885.

//

//

//

//

## CONCLUSION

For the reasons stated, the Commissioner's decision that Petersen is not disabled under the Act is affirmed.


IT IS SO ORDERED.


Dated this _____15_____ day of _____March_____, 2016.

_Marco Hernández_
_____
MARCO A. HERNÁNDEZ
United States District Judge